UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.O.L.R.,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01241-KES-SKO (HC)<br><br>ORDER GRANTING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>Doc. 3 |

Petitioner J.O.L.R. is a 23-year-old asylum seeker from Guatemala who entered the United States in 2024. After entry, he was briefly detained by immigration officials but then released after the officials determined that he was neither a danger nor a flight risk. Petitioner's evidence indicates that, since then, he has lived with his family in San Francisco, cared for his ailing grandmother, sought relief in his immigration case, complied with all immigration monitoring and reporting requirements, and maintained a clean criminal record. Despite immigration officials' prior determination that he posed neither a flight risk nor a danger, and the apparent lack of changed circumstances, Immigration and Customs Enforcement ("ICE") agents

1

re-detained him at a scheduled check-in on September 15, 2025.

On September 22, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for a temporary restraining order, Doc. 3.[1] Petitioner seeks an order that immediately releases him from immigration detention and enjoins the government from re-detaining him unless it first provides him with a hearing before a neutral adjudicator where the government must prove by clear and convincing evidence that he is a flight risk or danger to the community. For the reasons set forth below, petitioner's motion is granted.

**I.    Background**[2]

Petitioner fled Guatemala because he faced violence as a result of his sexual orientation. Doc. 1 at ¶¶ 9, 54. On August 25, 2024, he crossed the southern border and was detained by U.S. immigration officials for seven days. *Id.* While in detention, he informed the officers that he faced persecution and torture if he returned to Guatemala. *Id.* The immigration officials referred him for a credible fear interview with an asylum officer, and the asylum officer found that petitioner demonstrated a credible fear of persecution. *Id.* As a result of the asylum officer's credible fear finding and in accordance with federal immigration law, the immigration officials issued petitioner a notice to appear for removal proceedings pursuant to 8 U.S.C. § 1229a. *Id.* ¶ 55; Doc. 1-3 at 4–6. The immigration officials made a custody determination pursuant to 8 U.S.C. § 1226(a) and decided that petitioner would be released pending those removal proceedings. Doc. 1 at ¶ 55; *see* Doc. 1-3 at 2, 7. The regulations that authorize immigration authorities to release a noncitizen require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release

---

[1] Petitioner also filed a motion to proceed under pseudonym, which was granted by separate order.

[2] This section is based on petitioner's verified petition, declarations, and exhibits. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

[therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following his release from detention on September 1, 2025, petitioner went to live with his grandmother, aunt, and uncle in San Francisco, California. Doc. 1 at ¶¶ 12, 57. The immigration officials had instructed petitioner to report to the ICE office in San Francisco upon his arrival, which he did. *Id.* ¶¶ 55–56. During his appointment at the ICE office, ICE instructed him to report to the Intensive Supervision Appearance Program ("ISAP") office in San Francisco. *Id.* ¶ 56. Petitioner complied, and he was placed in the ISAP program. *Id.* ISAP officers required petitioner to wear a GPS ankle monitor for several days but then determined that he would be monitored instead through a phone monitoring system; he was required to take a photo of himself every week, answer phone calls from ISAP officers, and periodically report in person. *Id.* Petitioner's evidence indicates that he complied with each of these requirements. *Id.*

Petitioner thereafter helped care for his severely ill grandmother, assisted with upkeep of the home, spent time with family, attended church, and studied English. *Id.* ¶ 57. Although he was not granted work authorization immediately upon his release from detention, he became eligible for a work permit recently and began the process to apply. *Id.* In addition, petitioner has actively pursued relief in his removal proceedings. Doc. 1 at ¶ 58. He retained an attorney who helped him file an application for asylum and withholding of removal, and he has a final hearing scheduled for November 9, 2027, at the San Francisco Immigration Court. *Id.* Petitioner represents that he has maintained a clean criminal record. *Id.* ¶¶ 8, 25, 57; Doc. 3-3, Santanna Decl. at ¶ 12.

On September 2, 2025, petitioner appeared for a scheduled appointment at the San Francisco ISAP office, and ISAP instructed him to report to the San Francisco ICE office on September 15, 2025, for another standard appointment. *Id.* ¶ 59. When he reported to the ICE office, ICE agents arrested him. *Id.* ¶ 61. When asked why he was being arrested, the ICE agents stated that petitioner had failed to follow an order. *Id.* Petitioner told the agents that he had complied with all requirements. Petitioner represents that agents would not provide him with any

3

1  more information about what order he had purportedly failed to follow. *Id.* The agents
2  handcuffed petitioner, and he was held in a small holding room at the ICE office overnight. *Id.*
3  ¶¶ 65–67. Petitioner indicates that he was held in extremely uncomfortable and unsanitary
4  conditions. *Id.* ¶¶ 65–67. The next day, ICE agents transported him to Mesa Verde ICE
5  Processing Center, a detention facility in Bakersfield, California. *Id.* ¶ 71. Petitioner indicates he
6  was then held overnight with nine other detainees in an overcrowded holding cell in which there
7  was no room to lie down, before being assigned to a cell the following day. *Id.* ¶¶ 72–76.

8  **II.    Legal Standard**

9  The standards for issuing a temporary restraining order and a preliminary injunction are
10 "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839
11 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of
12 right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553
13 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is
14 likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of
15 preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the
16 public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of*
17 *Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12
18 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important
19 factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting
20 *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only
21 show that there are serious questions going to the merits—a lesser showing than likelihood of
22 success on the merits—then a preliminary injunction may still issue if the balance of hardships
23 tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the*
24 *Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations
25 omitted).

26 **III.   Discussion**

27 The Court finds that the requirements for issuing a temporary restraining order without
28 further notice are met. *See* Fed. R. Civ. P. 65(b). On September 21, 2025, petitioner notified

1  respondents' counsel that he would be filing the motion, by email to the U.S. Attorney's Office
2  email address for habeas petition filings.  *See* Doc. 3-3, Santanna Decl. at ¶ 35.  While
3  respondents have not appeared or filed a response, petitioner has set out specific facts
4  demonstrating that immediate and irreparable injury, loss, or damage may result before
5  respondents can be heard in opposition.  *See Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL
6  1853763, at *4 (N.D. Cal. July 4, 2025) (granting ex parte temporary restraining order in similar
7  circumstances).  The Court therefore turns to evaluate the *Winter* factors.

   **a. Petitioner is Likely to Succeed on the Merits.**

9  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified
10 only when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas v.*
11 *Davis*, 533 U.S. 678, 690 (2001); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash.
12 2023); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has
13 no legitimate interest in detaining individuals who have been determined not to be a danger to the
14 community and whose appearance at future immigration proceedings can be reasonably ensured
15 by a lesser bond or alternative conditions.").  Petitioner argues that the Due Process Clause bars
16 the government from re-detaining him without first providing a bond hearing where it must prove
17 that he is a flight risk or danger such that his detention is justified.  Doc. 4 at 13–26.

18 "Courts analyze [] due process claims in two steps: the first asks whether there exists a
19 protected liberty interest under the Due Process Clause, and the second examines the procedures
20 necessary to ensure any deprivation of that protected liberty interest accords with the
21 Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D.
22 Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460
23 (1989)).  These two steps are examined in turn.

   **1. Petitioner Possesses a Protected Liberty Interest.**

25 A protected liberty interest may arise from a conditional release from physical restraint.
26 *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to
27 arrest and detain an individual, a protected liberty interest under the Due Process Clause may
28 entitle the individual to procedural protections not found in the statute.  *See id.* (Due Process

requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner's release is similar. For over a year, it allowed him to live with his family in San Francisco and establish a life there. Petitioner cared for his ailing grandmother, assisted his family with upkeep of the house, practiced his religion, sought work authorization, and sought relief in his removal proceedings. Immigration officials' release of petitioner in 2024 reflected a determination that he did not pose a flight risk or danger to the community. *See Saravia*, 280 F. Supp. 3d at 1176. Petitioner indicates that he has no criminal record, and that, following his release in September 2024, he complied with the release terms and appeared at all immigration proceedings as required. The government then rearrested petitioner despite the lack of change in these circumstances, contradicting the "implicit promise that [petitioner's freedom] will be revoked only if he fails to live up to the [release] conditions." *Morrissey*, 408 U.S. at 482.

The Court finds that petitioner has a protected liberty interest in his release. *See*

*Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

## 2. A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over a year, and during that time, began a life in San Francisco, living with and caring for his family. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690;

7

1  *Padilla*, 704 F. Supp. 3d at 1172.  Petitioner has no criminal history and indicates he has attended
2  every court hearing and check-in since he arrived in the United States.  *See* Doc. 1 at ¶¶ 10, 36,
3  47–48, 94.  Given the absence of any procedural safeguards to determine if his detention was
4  justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."
5  *A.E.*, 2025 WL 1424382, at *5.

6  Third, the government's interest in detaining petitioner without a hearing is "low."
7  *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-
8  DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody
9  hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  The
10 government's interest is further diminished where a person "has consistently appeared for [his]
11 immigration hearings . . . and [] does not have a criminal record."  *Pinchi*, 2025 WL 1853763, at
12 *2.

13 On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which
14 should have been provided before petitioner was detained.  "'[T]he root requirement' of the Due
15 Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived
16 of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542
17 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127
18 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some
19 kind of a hearing *before* the State deprives a person of liberty . . . .").  The Supreme Court has
20 held that Due Process requires a pre-deprivation hearing before those released on parole from a
21 criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S. at 480–86.  The
22 same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*, 411 U.S. at 782.
23 Numerous district courts have held that these principles extend to the context of immigration
24 detention.  *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at
25 *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem,* No. 25-CV-
26 05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at
27 970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2
28 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4

(N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre*-deprivation hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9.

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.

Turning to the second *Winters* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a temporary restraining order.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

1        In conclusion, the Court finds that the requirements for issuing a temporary restraining

2 order are met.  Petitioner's immediate release is required to return him to the status quo ante—

3 "the last uncontested status which preceded the pending controversy."  *Pinchi*, 2025 WL

4 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2

5 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5

6 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik*

7 *v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same);

8 *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025)

9 (same).  Respondents are ordered to release petitioner immediately.  Respondents may not re-

10 detain petitioner unless the government proves by clear and convincing evidence at a bond

11 hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community.

12   **IV.    Conclusion and Order**

13        Accordingly, petitioner's motion for temporary restraining order, Doc. 3, is GRANTED.

14 Respondents are ORDERED to release petitioner immediately.  Respondents are ENJOINED

15 AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and

16 convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that

17 petitioner is a flight risk or danger to the community such that his physical custody is legally

18 justified.

19        Respondents are ORDERED TO SHOW CAUSE before this Court why a preliminary

20 injunction should not issue pending a final disposition of this matter.  The hearing on the order to

21 show cause will be held on October 7, 2025, at 1:30 p.m. in Courtroom 6 before District Judge

22 Kirk E. Sherriff.[3]  Respondents shall file any response to petitioner's motion by September 30,

23 2025.  Petitioner may file a reply by October 3, 2025.  The parties may stipulate to extend the

24 briefing schedule and hearing date, provided that this temporary restraining order will remain in

25 effect pending any such continuance.

26        Respondents are hereby notified of their right to apply to the Court for modification or

---

[3] Counsel requesting to appear at the hearing by video appearance shall contact the courtroom deputy at least 24 hours prior to the hearing.

10

dissolution of this Order on two (2) days' notice or such shorter notice as the Court may allow. Fed. R. Civ. P. 65(b).

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

IT IS SO ORDERED.

Dated:   September 23, 2025

UNITED STATES DISTRICT JUDGE