UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.O.L.R., <br><br> Petitioner, <br><br> v. <br><br> MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No. 1:25-cv-01241-KES-SKO (HC) <br><br> ORDER GRANTING PRELIMINARY INJUNCTION <br><br> Doc. 3 |

Petitioner J.O.L.R. is a 23-year-old asylum seeker from Guatemala who was detained but then released by immigration officials upon his entry into the United States. Immigration officials released him after determining that he was neither a flight risk nor a danger to the community and that he was entitled to file an asylum application, and they placed him in removal proceedings under 8 U.S.C. § 1229a. Like many others recently, petitioner was re-detained as he reported for a scheduled check-in with immigration officials. He was not provided with a hearing prior to his re-detention so that a neutral adjudicator could determine whether the circumstances had changed such that he could now be considered a flight risk or danger.

On September 22, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and an ex parte motion for a temporary restraining order, Doc. 3.[1]  On September 23, 2025, the Court granted petitioner's motion for a temporary restraining order, ordered respondents to release him from custody, and ordered respondents to show cause why a preliminary injunction should not issue.  Doc. 9.  On September 30, 2025, the government filed a response to the order to show cause, Doc. 12, and on October 3, 2025, petitioner filed a reply, Doc. 15.[2]  The Court held a hearing on October 7, 2025, and granted the preliminary injunction and indicated that this order would follow.  Doc. 17.

**I.     Background**[3]

Petitioner fled Guatemala because he faced violence as a result of his sexual orientation.  Doc. 1 at ¶¶ 9, 54.  On August 25, 2024, he crossed the southern border and was detained by U.S. immigration officials for seven days.  *Id.* ¶¶ 5–6; *see* Doc. 12-1, Villagran Decl. at ¶¶ 7–9.  While in detention, he informed the officers that he faced persecution and torture if he returned to Guatemala.  Doc. 1 at ¶¶ 5–6; Doc. 12-1, Villagran Decl. at ¶¶ 7–9.  Immigration officials referred him for a credible fear interview with an asylum officer, and the asylum officer found that petitioner demonstrated a credible fear of persecution.  Doc. 1 at ¶¶ 5–6; Doc. 12-1, Villagran Decl. at ¶¶ 7–9.  As a result of the asylum officer's credible fear finding and in accordance with federal immigration law, immigration officials issued petitioner a notice to appear for removal proceedings pursuant to 8 U.S.C. § 1229a.  Doc. 1 at ¶ 55; Doc. 1-3 at 4–6; Doc. 12-1, Villagran Decl. at ¶ 9.  Immigration officials made a custody determination pursuant to 8 U.S.C. § 1226(a) and decided that petitioner would be released pending those removal proceedings.  Doc. 1 at ¶ 55;

---

[1] Petitioner also filed a motion to proceed under pseudonym, which was granted by separate order.

[2] Respondents confirmed at the October 7, 2025 hearing that their response to the order to show cause, Doc. 12, serves also as their response to the habeas petition.

[3] Some of the facts recited here are drawn from petitioner's verified petition for writ of habeas corpus.  A court "may treat the allegations of a verified . . . petition as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

2

1  *see* Doc. 1-3 at 2, 7; Doc. 12-1, Villagran Decl. at ¶¶ 9–10.  The regulations that authorize
2  immigration authorities to release a noncitizen require that the noncitizen "demonstrate to the
3  satisfaction of the officer that such release would not pose a danger to property or persons" and
4  that the noncitizen is "likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).
5  "Release [therefore] reflects a determination by the government that the noncitizen is not a danger
6  to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal.
7  2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

8  Following his release from detention on September 1, 2024, petitioner went to live with
9  his grandmother, aunt, and uncle in San Francisco, California.  Doc. 1 at ¶¶ 12, 57.  Immigration
10 officials instructed petitioner to report to the ICE office in San Francisco upon his arrival, which
11 he did.  *Id.* ¶¶ 55–56.  During his appointment at the ICE office, ICE instructed him to report to
12 the Intensive Supervision Appearance Program ("ISAP") office in San Francisco.  *Id.* ¶ 56.
13 Petitioner complied, and he was placed in the ISAP program.  *Id.*  ISAP officers required
14 petitioner to wear a GPS ankle monitor for several days but then determined that he would be
15 monitored instead through a phone monitoring system; he was required to take a photo of himself
16 every week, answer phone calls from ISAP officers, and periodically report in person.  *Id.*
17 Respondents assert that, following his placement in the ISAP program, petitioner failed to timely
18 complete virtual check-ins on three occasions and that he failed to report for an in-person check
19 in on another occasion.  Doc. 12-1, Villagran Decl. at ¶¶ 11, 13–15.  Petitioner disputes these
20 assertions and indicates that he complied with each of the ISAP requirements.  Doc. 1 at ¶ 56;
21 Doc. 15 at 10–11; Doc. 15-1, Ex. 1; Doc. 15-2, Ex. 2; Doc. 15-3, Ex. 3; Doc. 15-4, Ex. 4.

22 While living in San Francisco, petitioner helped care for his severely ill grandmother,
23 assisted with upkeep of the home, spent time with family, attended church, and studied English.
24 Doc. 1 at ¶ 57.  Although he was not granted work authorization immediately upon his release
25 from detention, he became eligible for a work permit recently and began the process to apply.  *Id.*
26 In addition, petitioner has actively pursued relief in his removal proceedings.  *Id.* ¶ 58.  He
27 retained an attorney who helped him file an application for asylum and withholding of removal,
28 and he has a final hearing scheduled for November 9, 2027, at the San Francisco Immigration

1  Court. *Id.* The government does not dispute petitioner's representation that he has maintained a
2  clean criminal record. *Id.* ¶¶ 8, 25, 57; Doc. 3-3, Santanna Decl. at ¶ 12.

3  On September 15, 2025, ICE agents arrested petitioner when he appeared for a scheduled
4  appointment at the San Francisco ICE office. Doc. 1 at ¶¶ 59–61; Doc. 12-1, Villagran Decl. at
5  ¶ 16. When asked why he was being arrested, the ICE agents stated that petitioner had failed to
6  follow an order. Doc. 1 at ¶ 61. Petitioner asserts that he told the agents that he had complied
7  with all requirements. *Id.* Petitioner represents that agents would not provide him with any more
8  information about what order he had purportedly failed to follow. *Id.* The agents handcuffed
9  petitioner, and he was held in a small holding room at the ICE office overnight. *Id.* ¶¶ 65–67.
10 Petitioner indicates that he was held in extremely uncomfortable and unsanitary conditions. *Id.* ¶¶
11 65–67. The next day, ICE agents transported him to Mesa Verde ICE Processing Center, a
12 detention facility in Bakersfield, California. *Id.* ¶ 71. Petitioner indicates he was then held
13 overnight with nine other detainees in an overcrowded holding cell in which there was no room to
14 lie down, before being assigned to a cell the following day. *Id.* ¶¶ 72–76.

15 On September 24, 2025, DHS released petitioner from detention pursuant to the Court's
16 order granting his motion for temporary restraining order. Doc. 12-1, Villagran Decl. at ¶¶ 18–
17 19.

18 **II.    Legal Standard**

19 "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*
20 *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–
21 90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to
22 succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary
23 relief, that the balance of equities tips in [her] favor, and that an injunction is in the public
24 interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*,
25 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)).
26 "Likelihood of success on the merits is a threshold inquiry and is the most important factor."
27 *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot.*
28 *Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there

are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**III.     Discussion**

      **a.  Petitioner is Likely to Succeed on the Merits.**

Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Petitioner argues that the Due Process Clause bars the government from re-detaining him without first providing a bond hearing where it must prove that he is a flight risk or danger such that his detention is justified. Doc. 4 at 13–26.

Respondents argue that petitioner is not entitled to the protections of the Due Process Clause, asserting that petitioner is entitled only to the statutory rights provided by Congress.[4] Doc. 12 at 1–12 (citing *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), and *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). Respondents' argument is unpersuasive. First, it fails to appreciate the distinction between persons already located inside the United States, like petitioner, and persons attempting to enter the United States, like the petitioners in *Thuraissigiam* and *Landon*. "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 269 (1990); *Johnson v. Eisentrager,* 339 U.S. 763, 784 (1950)). "But once an alien enters the country,

---

[4] In their response, respondents argue at length that § 1225(b), which mandates detention, is the applicable statutory provision. *See* Doc. 12 at 1–6, 8–11. However, the issue here concerns the requirements of the Due Process Clause. The Court need not decide which detention provision applies to petitioner as that is not the subject of his motion.

5

the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.*; *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

Second, respondents' argument misconstrues the nature of the challenge that petitioner brings in this case, which is a challenge to his detention. *Thuraissigiam* held that a petitioner who was stopped at the border did not have any due process rights *regarding admission into* the United States. *Thuraissigiam*, 591 U.S. at 107; *see also Landon*, 459 U.S. at 32 ("("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . ."). However, petitioner challenges his re-detention without a hearing; he does not challenge in this habeas action any determination regarding his admissibility. *See Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to detention); *Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to [detain] non-citizens is always constrained by the requirements of due process.").

"Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority"—through detention or otherwise. *Hernandez*, 872 F.3d at 990 n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695). The Due Process Clause protects petitioner, a person inside the United States, from unlawful detention. *See Zadvydas*, 533 U.S. at 693.

Petitioner's Due Process claim will be analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D.

1  Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460
2  (1989)).

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84. Petitioner's release on his own recognizance pending his immigration proceedings was similar. Among other things, it allowed him to live with his family in San Francisco, care for his ailing grandmother, assist his family with upkeep of the house, practice his religion, and seek relief in his removal

7

1    proceedings.[5]

2    Citing *Thuraissigiam*, respondents argue that a conditional release into the country of a
3    noncitizen who is an "applicant for admission" is not sufficient to create a protected liberty
4    interest. Doc. 12 at 12. Respondents' reliance on *Thuraissigiam* is misplaced. The noncitizen in
5    that case was stopped 25 yards from the border, was never released into the country, and was
6    placed in expedited removal proceedings. *Thuraissigiam*, 591 U.S. at 10. Therefore, he had not
7    "established connections in this country." *Id.* Here, petitioner was placed in full removal
8    proceedings and was conditionally released into the country for over a year, allowing him to
9    "form [many of] the [] enduring attachments of normal life." *Morrissey*, 408 U.S. at 482; *see*
10   *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21,
11   2025) (reaching the same conclusion).

12   The Court finds that petitioner has a protected liberty interest in his release. *See*
13   *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17,
14   2025) (recognizing that "the liberty interest that arises upon release [from immigration detention]
15   is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL
16   1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have
17   been released have a strong liberty interest). The Court must therefore determine what process is
18   due before the government may terminate his liberty.

19   **2. A Pre-Deprivation Bond Hearing Is Required.**

20   Due process "is a flexible concept that varies with the particular situation." *Zinermon v.*
21   *Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be
22   evaluated using the *Mathews v. Eldridge* factors:

23   > First, the private interest that will be affected by the official action;
24   > second, the risk of an erroneous deprivation of such interest through

---

[5] Respondents assert that petitioner failed to timely complete several check-ins and missed an in-person appointment, Doc. 12 at 7–8, while petitioner asserts that he complied with the release terms and appeared at all immigration check-ins as required, Doc. 15 at 10–11. It is not necessary to resolve this factual dispute in this action. The issue here is whether the Due Process Clause requires a hearing before a neutral arbiter who will determine whether there are any changed circumstances warranting petitioner's re-detention.

> the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[6]

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over a year, and during that time, formed attachments of normal life, including living with his family and caring for his ailing grandmother. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history. *See* Doc. 1 at ¶¶ 8, 25, 57. Although respondents assert that petitioner "failed to adhere to [the release] requirements,"

---

[6] Respondents argue that the *Mathews* factors do not apply because the Supreme Court upheld mandatory civil immigration detention under § 1226(c) without utilizing the *Mathews* factors in *Demore v. Kim*, 538 U.S. 510 (2003). Doc. 12 at 11. This argument is unpersuasive for several reasons. First, *Demore* involved a facial challenge to § 1226(c). *See Demore*, 538 U.S. at 530, 532–33; *see also Pham v. Becerra*, 717 F. Supp. 3d 877, 885 (N.D. Cal. 2024) (explaining that *Demore* involved a facial challenge). Here, petitioner raises an as-applied challenge to his detention. The *Mathews* factors are more appropriately utilized in an as-applied challenge because, as the Ninth Circuit has noted, "*Mathews* remains a flexible test" that accounts for the competing interests of an individual detainee and the government. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). Second, respondents argue that the *Mathews* factors are inapplicable without proposing an alternative test to evaluate the Due Process issue. *See* Doc. 12 at 11. Courts in this circuit regularly employ the *Mathews* factors to evaluate the Due Process argument that petitioner makes here. *See e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). Respondents do not offer a persuasive reason to depart from this practice.

Doc. 12 at 7–8, petitioner indicates that he complied with the release terms and appeared at all immigration check-ins as required. *See* Doc. 1 at ¶ 56; Doc. 15 at 10–11; Doc. 15-1, Ex. 1; Doc. 15-2, Ex. 2; Doc. 15-3, Ex. 3; Doc. 15-4, Ex. 4. No neutral arbiter has determined whether the facts show that petitioner is a flight risk or danger to the community. Given the absence of any procedural safeguards to determine if his detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, the government's interest in detaining petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. The government's interest is further diminished where a person "has consistently appeared for [his] immigration hearings . . . and [] does not have a criminal record." *Pinchi*, 2025 WL 1853763, at *2.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before petitioner was detained.[7] "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has held that Due Process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.

---

[7] Respondents argue that the Court should not require a pre-deprivation hearing because the statute does not require it and, in *Reno v. Flores*, 507 U.S. 292 (1993), the Supreme Court upheld the statutory requirement of a post-deprivation hearing in the immigration context. However, *Reno* is meaningfully different from this case. *Reno* concerned a class of juvenile noncitizens who, following their arrests by immigration authorities, were held in a "government-selected child-care institution" because they had "no available parent, close relative, or legal guardian" to whom they could be released. *Reno*, 507 U.S. at 302.

1 Numerous district courts have held that these principles extend to the context of immigration detention. *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre*-deprivation hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9.

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.

Turning to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." [8] *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a temporary restraining order.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, the relevant interest in this

---

[8] Respondents argue that this presumption does not apply when a petitioner fails to establish a likelihood of success on the merits, *see* Doc. 12 at 14, but as explained above, petitioner has shown a likelihood of success on his claim that his re-detention without a bond hearing is unconstitutional.

case is whether it may detain a noncitizen without a bond hearing.  Faced with a choice "between [this minimally costly procedure] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor.  "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d. Burden of Proof

Respondents argue that the burden of proof should fall on petitioner at the bond hearing.  Doc. 12 at 16.  The Court finds that in this context the burden is more appropriately placed on the government.  *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1107 (W.D. Wash. 2019); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *8 (E.D. Cal. July 25, 2025).

In *Singh v. Holder*, the Ninth Circuit held, in the context of hearings provided for those detained under § 1226(c), that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that *Singh* was based on general principles of due process).  "Because it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'— deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection." *Id.* at 1203–04 (quoting *Addington v. Texas,* 441 U.S. 418, 427 (1979)).  These same concerns are present here.

12

Following a line of cases which utilized the constitutional avoidance canon to read a bond hearing requirement into the statute, the Ninth Circuit extended the burden of proof principles from *Singh* to bond hearings for those detained under § 1225(b) and § 1231(a). *See Diouf v. Napolitano*, 634 F.3d 1081, 1082 (9th Cir. 2011); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("*Rodriguez*"). Although the Supreme Court subsequently held in *Jennings* that the constitutional avoidance canon could not be used to read a bond hearing requirement into the statute, it did not address an as-applied constitutional due process challenge. *Jennings*, 583 U.S. at 304–06, 312 ("Because the Court of Appeals . . . had no occasion to consider respondents' constitutional arguments on their merits[,] . . . we do not reach those arguments."). *Singh* and *Rodriguez* "relied on the Due Process Clause in determining" who should bear the burden of proof at those bond hearings. *Rodriguez Diaz*, 53 F.4th at 1202; *see Singh*, 638 F.3d at 1203–06. The issue of the burden of proof at a hearing required by due process therefore appears to remain governed by *Rodriguez* and its extension of *Singh*'s requirements to bond hearings for § 1225(b) detainees. *See Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *10 (W.D. Wash. Aug. 7, 2025) (applying *Singh* in § 1225(b) case); *Banda*, 385 F. Supp. 3d at 1107 (same); *Abdul-Samed*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *8 (same).

Respondents point to *Rodriguez Diaz*, which held that § 1226(a), which places the burden of proof on the detainee at a bond hearing, was constitutionally adequate. *Rodriguez Diaz*, 53 F.4th at 1210. But "[s]ection 1226(a) offers substantial procedural protections to detained persons," *id.* at 1194, which cannot be said of § 1225(b), the provision under which respondents maintain that petitioner is now detained. In that regard, § 1225(b) is more like § 1226(c), as both mandate detention. The Court finds that the burden of proof should be placed on the government at any future bond hearing.

### e. Remedy

In conclusion, the Court finds that the requirements for issuing a preliminary injunction are met. Respondents may not re-detain petitioner unless the government proves by clear and convincing evidence at a bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community.

13

**IV.     Conclusion and Order**

Accordingly, petitioner's motion for temporary restraining order, Doc. 3, is converted to a motion for preliminary injunction and is GRANTED.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

IT IS SO ORDERED.

Dated:    October 10, 2025

UNITED STATES DISTRICT JUDGE